## 25742. ATLANTA AND WEST POINT RAILROAD COMPANY *v.* McCORD.

Decided December 5, 1936.

*Heyman & Heyman, R. W. Martin,* for plaintiff in error.
*L. M. Wyatt, L. R. Morgan,* contra.

STEPHENS, J. 1. A joint interest by the occupants of an automobile in the objects and purposes of the trip for which the automobile is being used does not so engage them in a joint enterprise as to render the negligence of the driver imputable to one of the other occupants, where there is no joint control in the operation of or in the manner of the operation of the automobile. On the trial of a case against a railroad company, to recover damages for injuries received by the plaintiff from a collision of his automobile with a train at a public crossing, where it appeared from the evidence, without contradiction, that the plaintiff was not the driver of the automobile, but was with the driver who owned and had control of it, and with another person, traveling for the purpose of going rabbit hunting, and there was no evidence from which it could be inferred that the plaintiff had any control of the operation or the manner of operation of the automobile, the conclusion is demanded, as a matter of law, that the plaintiff and the driver of the automobile were not so engaged in a joint enterprise as to render the negligence of the driver imputable to the plaintiff; and that the plaintiff was riding in the automobile as the guest of the

driver. The court did not err in refusing a request to instruct the jury that if the plaintiff and the driver of the automobile were engaged in a joint enterprise, any negligence of the driver would be imputable to the plaintiff, and did not err in instructing the jury that the negligence of the driver was not imputable to the plaintiff. The court's charge, in expressing the opinion that the plaintiff was the guest of the driver, was not error.

2. A charge to the jury, that where a person is injured as a result of the negligence of a railroad company he is entitled to recover, was not harmful error in that the court failed therein to instruct the jury that the negligence of the defendant which would authorize a recovery must be such negligence as is alleged in the petition. Where the court had already instructed the jury as to the contentions of the parties, and as to the specific acts of negligence alleged as the cause of the plaintiff's injuries, the jury could not have understood, by the excerpt from the charge, that the plaintiff would be entitled to recover on any ground of negligence not alleged in the petition. Particularly is this true where the evidence was insufficient to authorize an inference that the railroad company was negligent in any manner other than as alleged in the petition. The charge is nowhere subject to the objection that it authorized the jury to find the defendant liable for any acts of negligence not charged in the petition.

3. A person in going upon a railroad crossing was not guilty of negligence, as a matter of law, in not seeing an approaching train, where the train failed to give the crossing alarm required by law, although before going on the crossing he had an unobstructed view of the approach of the train for at least a half mile. The court did not err in refusing a request to charge the jury that where a person approaching a crossing had an unobstructed view of the track on which the train approached for about one half of a mile, the railroad company owed him no duty to slow its train; or that the running of the train when approaching the crossing at fifty miles an hour would not be negligence. The requested instruction is not a correct statement of the law applicable to the case.

4. The request to charge, in effect, that if the jury should believe that the negligence of the driver of the automobile was the proximate cause of the plaintiff's injuries, although the defendant

may have been negligent, but the negligence of the defendant did not contribute to or concur with the negligence of the driver of the automobile in bringing about the plaintiff's injuries, was covered by the general charge.

5. The court having clearly instructed the jury that there could be no recovery if the negligence of the plaintiff was the cause of the injury, or if the plaintiff could have prevented the injury by the exercise of ordinary diligence after the negligence of the defendant, if any, was discovered by the plaintiff, requests to charge that if the plaintiff by the exercise of ordinary diligence could have discovered the negligence of the defendant he could not recover, and that the plaintiff could not recover if he could have discovered the negligence of the defendant by the exercise of his senses of sight and hearing, were substantially covered by the general charge; and the court did not err in refusing them.

6. A person riding in an automobile as the guest of another who is operating the automobile is not guilty, as a matter of law, of negligence barring a recovery against a railroad company for an injury received by him from the automobile in which he is riding being run into by a train of the defendant at a public crossing, in failing to observe the approaching train when it is close upon him, although the view down the track for a long distance in the direction from which the train approaches is in full and unobstructed view of a person approaching the crossing.

7. Before a railroad company can be absolved from negligence in the failure of the operator of a train to give the crossing alarm required by statute, by blowing a whistle or ringing a bell on approaching a crossing, upon the ground that the person injured by the train at the crossing was aware of the approach of the train, or in the exercise of due care should have known of its approach, it must appear that he had knowledge of its approach, or by the exercise of ordinary care should have known of its approach in time to avoid the injury. Where a person riding as the guest of a driver of an automobile, in approaching a railroad crossing, and before he went upon the crossing, looked in the direction from which the train was coming, and did not see the train, although the view of the track was unobscured for a long distance, then immediately looked in the other direction, and then immediately looked again in the direction from which the train was coming, and

then saw the train, and it does not appear that he could have stopped the automobile which the other person was driving, or could have jumped from the automobile, or otherwise by the exercise of due care could have avoided the injury to him from being hit by the train, it does not appear that he knew of the approach of the train, or by the exercise of ordinary care could have known of it in time to prevent the injury. A request to charge the jury that if a person in approaching a railroad-track, but before attempting to cross, looked and listened for the approach of a train, he was charged with notice of what an ordinarily prudent person would have seen by looking, and if on looking an ordinarily prudent person *would have seen* the approach of the train, it would be immaterial whether the operators of the train were negligent in failing to give the required statutory warning of the train's approach by blowing a whistle or ringing a bell, is not applicable here since it does not appear that the person injured, who was riding in the automobile on approaching the crossing, knew of the approach of the train, or by the exercise of ordinary care could have known of the approach of the train, in time to avoid the injury. The requested charge not being applicable, the court did not err in refusing to give it.

8. The mere fact that a person, in approaching a railroad crossing in an automobile, is going at such a slow rate of speed that he could easily stop within a few feet, would not authorize or justify the engineer or person operating the train approaching a crossing to assume that the automobile would stop before it reached the crossing, where it does not appear that the engineer knew of the presence of the automobile. The mere fact that the engineer *could* have seen the automobile is not sufficient to relieve him of negligence on the ground that he could assume that the automobile would stop before reaching the crossing. Therefore a request to charge that if the engineer or fireman of a train approaching a crossing *could* have seen an automobile as it approached the crossing at a slow rate of speed and could easily stop within a few feet, where the train was in plain view of the occupants of the automobile and the automobile was some distance from the crossing, the engineer would have the right to assume that the occupants of the automobile would stop the automobile before it reached a point of danger from the operation of the train, did not state a correct proposition of law, and the court did not err in refusing it.

9. An extrajudicial statement of one of the occupants of the automobile in which the plaintiff was riding, who also was injured as a result of the same transaction which caused the plaintiff's injuries, particularly describing the character of his injuries, the amount of money paid him in settlement, and his opinion that the settlement was insufficient, while perhaps irrelevant and inadmissible, was not harmful to the defendant. The introduction of such evidence was not error demanding the grant of a new trial.

10. Where a party who can read seeks to set aside a contract on the ground that he signed it without reading it and without knowing its contents, relying on the false representations of the other party, it must appear that he signed the contract in some emergency which would excuse his failure to read it, or that his failure to read it was brought about by some misleading artifice or device perpetrated by the other party. Therefore a charge by the court that if the railroad company through its agent perpetrated a fraud on the plaintiff, and made false representations to induce him to sign the contract, there would be such fraud as would avoid the contract, is not the equivalent of saying that fraudulent representations as to the contents of the contract would operate to avoid the contract. This charge stated in general terms the rule that fraud to induce the signing of a contract avoids the contract. It was not subject to the exception that it failed to instruct the jury specifically that the alleged fraud must have induced the signing of the contract, or that the alleged fraud must have been some act which prevented the complaining party, who could read, from reading the contract.

11. It is essential to the validity of a contract, to render it enforceable, that the contracting parties be able to contract. Therefore where one of the parties seeks to rescind the contract on the ground of fraud in the procurement of its execution by the opposite party, it is not error prejudicial to the latter party for the court to charge the jury that if the contract was entered into in good faith by both parties, and no fraud was practiced on the party seeking to set aside the contract, and no deception practiced on him, and at the time of the execution of the contract he was in possession of all his faculties, he would be bound by the contract, on the ground that in stating that the party must have been in possession of all his faculties, and that no deception was practiced

on him, the court unduly restricted his "mental capacity so far as his dealings" with the other party were concerned, and that the court should have expressly limited the alleged fraudulent acts to those which may have induced or prevented the complaining party from reading the instrument which he executed. This ruling is equally applicable as respects the exceptions to the charge contained in grounds 7 and 8 of the motion for new trial.

12. Where a person who was injured by a railroad train was requested by an agent of the railroad company to sign a paper which in effect was a release of the company from liability for damages, and the injured person signed the paper without reading it or knowing its contents, although he could read, and he at the time was on his back in bed and unable to feed himself by the use of his hands, and was induced to sign the paper by being paid five dollars by the railroad's agent and by the representation made to him by the agent that he would be taken care of and given more money as he needed it until he could go to work, and the agent required him to sign the paper by taking his hand and holding it while he held the pencil to sign it, and at the time he did not know what he was signing, because he was suffering, the representation that if he signed the paper he would be taken care of and would be given money as he needed it until he could go to work was equivalent to a representation by the agent that the paper was not what it actually was, namely, a release from liability in consideration of money already actually paid. The fact that the person signing the paper was in the physical condition described, and was suffering to the extent that he did not know what he was doing, and his hand had to be held by the agent while he signed the paper, constituted such an emergency or situation under the circumstances as was sufficient to authorize the inference that he was excused from reading the paper. Therefore the inference is authorized that the execution of the paper was caused by the fraud of the agent inducing the party signing the paper to do so in the belief that he was not signing a paper which would relieve the railroad company from liability. *Chapman* v. *Atlanta Guano Co.*, 91 *Ga.* 821 (18 S. E. 41) ; *Wood* v. *Cincinnati Safe &c. Co.*, 96 *Ga.* 120 (22 S. E. 909) ; *McBride* v. *Macon Telegraph Publishing Co.*, 102 *Ga.* 422 (2) (30 S. E. 999). Where it appears that the injured person who signed the paper and ac-

cepted the five dollars, which was paid him in the form of a check by the railroad company, undertook within a short time thereafter to rescind the contract, and returned the check to the railroad company, which still retains the check, the inference is authorized that the injured person, within a reasonable time after the perpetration of the alleged fraud, rescinded the contract and made restitution to the railroad company.

13. The evidence authorized the verdict for the plaintiff, and no error appears.

*Judgment affirmed. Jenkins, P. J., and Sutton, J., concur.*